UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| LARRY D. BEST, JR., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CASE NO.  1:03-CV-402 WCL |
| | ) | |
| PORTLAND POLICE DEPARTMENT, | ) | |
| SGT. PATRICK D. WELLS, | ) | |
| ROBERT W. MYERS, | ) | |
| STEVE W. SCHLECHTY, | ) | |
| JUDSON T. WICKEY, | ) | |
| and CITY OF PORTLAND, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court is Defendants' Motion for Summary Judgment filed on January 23, 2007. Plaintiff responded on April 9, 2007 to which Defendants replied on April 23, 2007. Plaintiff filed a sur-reply on April 30, 2007. For the following reason, the Defendants' Motion will be GRANTED.

### Factual Background[1]

On December 6, 2002, Plaintiff, Larry Best ("Best"), was arrested on an outstanding warrant issued by the Jay Circuit Court for failure to appear. At the time of his arrest, he was an overnight guest of Annette Lennartz ("Lennartz") who resided at 631 E. Water Street ("Water Street Property") in Portland, Indiana. Defendant Robert Myers ("Officer Myers") of the Portland Police Department entered Lennartz's residence after receiving her consent and located Best in the home.

---

[1]As required by Fed.R.Civ.P. 56, the following facts, where disputed, are interpreted favorably to Best, the non-movant.

1

Prior to receiving Lennartz's consent to search, Officer Myers seized a package of cigarettes sitting on a coffee table in the living room.

Simultaneously with Best's arrest, Defendant Judson Wickey ("Officer Wickey") filed an Affidavit of Probable Cause for Search Warrant in which he sought the issuance of a search warrant for a mobile home located at 2687 E. Treaty Line Road in Jay County, Indiana, belonging to Joseph Flemming. Officer Wickey had reason to believe, via information from a confidential informant, that evidence of a methamphetamine manufacturing operation, run by Best, was occurring at that location. Upon application to the Jay Circuit Court, the judge determined the existence of probable cause and issued a warrant authorizing authorities to search 2687 E. Treaty Line Road ("Treaty Line Road Property") and all outbuildings, trailers, campers, motor vehicles, and persons for "illegal narcotics and the equipment to manufacture illegal narcotics" and "chemicals used to manufacture methamphetamine." See Dfdt's Exh. B (Copy of the Search Warrant). It appears, although the facts are not specific, that police did uncover such evidence at the Treaty Line Road Property.

Subsequently, a criminal information was filed against Best in the Jay Circuit Court on December 16, 2002 charging Best with two counts of dealing in methamphetamine. Count I charged Best with manufacturing three grams or more of methamphetamine. Count II charged him with possession of methamphetamine with intent to distribute. See Dfdt's Exh C (Information). On this same date, a preliminary hearing was held and the Jay Circuit Court judge found probable cause for the filing of the charges against Best.

Thereafter, Best filed a Motion to Suppress the evidence seized at both the Water Street and Treaty Line Property asserting that both searches violated his Fourth Amendment rights. With respect to the Treaty Line Property, Best asserted that the search warrant was obtained through the

2

use of false information in the warrant application. As to the Water Street Property, Best contended that the seizure of the cigarettes was an unreasonable search and seizure.

The Jay Circuit Court held a hearing on the motion and eventually entered an Order denying the motion to suppress. The court determined that the probable cause affidavit was "devoid of any reliable information that would establish the credibility of the confidential informant" and thus, found the warrant defective. However, the court also concluded that Best lacked standing to object to the search of the Treaty Line Property because he did not reside there and thus, he lacked a reasonable expectation of privacy in that location. As to the Water Street Property, the Jay Circuit Court entered an order denying the motion to suppress but did not specify in its order the grounds for the denial. Best was represented by counsel during these proceedings and had an opportunity to testify at the hearing.

Best, through counsel, appealed the denial of the motion to suppress to the Indiana Court of Appeals. On January 27, 2005, that court affirmed the denial of the motion to suppress finding that police officers acted in good faith reliance upon the search warrant when seizing evidence from the Treaty Line Property.[2] In addition, the Court of Appeals upheld the warrantless search of the Water

---

[2]The Court of Appeals wrote:

> In the instant case, we agree with the State that the search warrant was not so facially defective that no reasonable officer could presume it was valid. Officer Wickey spoke with the CI twice on December 6 and obtained information about Best and Coby's methamphetamine manufacturing. Although most of the hearsay that Officer Wickey corroborated through surveillance involved facts that anyone in that location could have observed, Officer Wickey also observed the C.I. leave the Treaty Line Road property that day. Thus, a reasonable officer could presume that the hearsay the C.I. provided was sufficiently corroborated by his surveillance.
> Furthermore, Best does not point to any support for his contention that the warrant was so defective that no reasonable officer would presume it to be valid...For these reasons, the good faith exception applies, and the trial court properly concluded that Best's motion to suppress all evidence found at the Treaty Line Road property should be denied.

3

Street Property finding that Best had no legitimate expectation of privacy in the package of cigarettes.[3]

While the charges stemming from these events were pending, Best was tried and convicted on three other felony charges related to drug transactions occurring in October 2002. He was sentenced as a habitual offender and received concurrent 45 year sentences on each count.[4] Thereafter, the Jay County Prosecutor dismissed the charges arising out of the searches occurring on December 6, 2002. Best subsequently filed this lawsuit pursuant to 42 U.S.C. §1983, alleging violations of his Fourth and Fourteenth Amendment rights arising from the two searches on December 6, 2002.

## Summary Judgment Standards

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim.

---

[3]As to this issue, the Court of Appeals wrote:

> In the instant case, the evidence is undisputed that the cigarette packs on the coffee table belonged to Best. Therefore, we must determine whether the cigarette packs supported a reasonable expectation of privacy. Applying the two-step analysis, we need not decide whether Best held a subjective expectation of privacy in the cigarette packs because we conclude that even if Best did hold an expectation of privacy in the cigarette packs, such an expectation would not be reasonable. Cigarette packs do not normally hold highly personal items. Furthermore, the packs were sitting on a coffee table in the living room and easily accessible to visitors, hence the living room is an area in the home generally accessible to visitors. For these reasons, cigarette packs do not support a reasonable expectation of privacy, and Lennartz's consent to search her home for drugs included consent to search the cigarette packs on the coffee table.

[4]Best appealed these convictions and, on November 14, 2006, the Indiana Court of Appeals issued an unpublished opinion affirming the convictions.

*Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 2512; *In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir. 1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir. 1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir. 1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992)(quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986)).

Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute because the issue of fact must be genuine. Fed. R. Civ. P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.*, 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id*. A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512. Mindful of these principles the court turns now to the parties' contentions.

## **DISCUSSION**

To prevail on a Section 1983 claim, the claimant must allege "(1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was

5

visited upon [him] by a person or persons acting under color of state law." *Kramer v. Village of North Fond du Lac,* 384 F.3d 856, 861 (7th Cir.2004). Suit may be brought against individual officers in either their official or individual capacity or both. The distinction is telling because where suit is brought against an individual in his official capacity it is really a claim against the municipality, *see, Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir. 1997), and hence a plaintiff must show that the municipality maintained an express policy of depriving its citizens of their constitutional rights, *see, McTeague v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995), that its practice of depriving citizens of their constitutional rights, though not authorized or not written, was so widespread so as to have the force of law, *Board of County Comm'n of Bryan v. Brown,* 117 S.Ct. 1382, 1388 (1997), or that the individual in question was a person with final policymaking authority who made a deliberate choice to either deprive plaintiff of some constitutional right, *see, West v. Waymire*, 114 F.3d 646, 651-52 (7th Cir) *cert. denied*, 118 S.Ct. 337 (1997), or acquiesced in such a deprivation turning a "blind eye for fear of what [he] might see, *Lincoln v. Village of East Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997).

Here, Best initially presented several claims, one against the municipality of Portland, as well as several claims against the individual officers involved in the alleged constitutional deprivations. Insofar as this may be deemed a suit against the defendants in their official capacity, it is clear that they are entitled to judgment on the same. The record is bereft of any evidence, and the plaintiff concedes as much in his brief, that either the Portland Police Department or the City of Portland maintained an express policy of depriving its citizens of their constitutional rights, let alone that its practice of depriving citizens of their constitutional rights was so widespread so as to have the force of law as would be required to establish an official capacity claim. Accordingly, the Defendants

motions for summary judgment as to these entities is GRANTED.

This leaves the individual capacity claims against the officers involved in the challenged searches under the Fourth, Fifth, and Fourteenth Amendments.  Each shall be addressed in turn.

**Fourth/Fourteenth Amendment Claims**

Defendants have moved for summary judgment on all of Best's individual capacity claims under the Fourth and Fourteenth Amendments contending that the issues regarding the searches and seizures occurring on December 6, 2002 have already been litigated in the state courts with unfavorable results to Best.  They assert, then, that the relitigation of these issues in federal court is barred by the doctrine of collateral estoppel or "issue preclusion."[5]

Plaintiff responds with a technical argument – namely, that the doctrine of collateral estoppel is an affirmative defense required to be pled by Defendants in their Answer, the Defendants did not do so here, and therefore, they have waived the defense.  *See* Fed.R.Civ.P. 8(c) (listing preclusion as an affirmative defense) and *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 526 (2d Cir.2004) ("Generally a failure to plead an affirmative defense results in a waiver."); *Scherer v. Equitable Life Assurance Soc'y,* 347 F.3d 394, 398 (2d Cir.2003) ( "The preclusion doctrines ... are waiveable affirmative defenses."); *Curry v. City of Syracuse,* 316 F.3d 324, 330-31 (2d Cir.2003) ("[C]ollateral estoppel, like res judicata, is an affirmative defense.... [I]t normally must be pled in

---

[5]At first glance, the court had some concerns that perhaps *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), barred Best's claims as opposed to the doctrine of collateral estoppel. The broad rule of *Heck* is that a plaintiff convicted of a crime in state court cannot bring a § 1983 claim which, if successful, would imply that his conviction was invalid, unless and until the conviction has been reversed on appeal or otherwise invalidated. *Id.* at 486-87.  Here, however, Best was never convicted of the criminal charges arising out of the searches on December 6, 2002.  In fact, the prosecutor dismissed those charges.   Accordingly, *Heck* cannot supply the rule of decision in this instance.

7

a timely manner or it may be waived.").  Because he believes the issue has been waived, Plaintiff presents no legal grounds for why collateral estoppel should not apply in this case.

It is undisputed that the Defendants failed to assert collateral estoppel in their responsive documents.  Nevertheless, the court can easily dispense with the Plaintiff's technical argument since the court may raise the issue of collateral estoppel on its own due to the important institutional interests implicated by the doctrine.  See *Arizona v. California*, 530 U.S. 392, 412-13 (2000); *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir.), certiorari denied, 510 U.S. 902 (1993). Indeed, "[t]he benefits of precluding relitigation of issues finally decided run not only to the litigants, but also to the judicial system." *Studio Art Theatre of Evansville, Inc. v. City of Evansville, Ind.* 76 F.3d 128, 130 (7th Cir. 1996);  *Doe v. Pfrommer,* 148 F.3d 73, 80 (2d Cir.1998) (concluding that policy of "avoiding relitigation" justified *sua sponte* consideration of collateral estoppel defense).  In *United States v. Sioux Nation,* 448 U.S. 371, 432 (1980) the Supreme Court further explained the rationale of permitting courts to raise collateral estoppel issues *sua sponte*:

> res judicata and its offspring, collateral estoppel, are not statutory defenses; they are defenses adopted by the courts in furtherance of prompt and efficient administration of the business that comes before them. They are grounded on the theory that one litigant cannot unduly consume the time of the court at the expense of other litigants, and that, once the court has finally decided an issue, a litigant cannot demand that it be decided again.
>
> ...It matters not that the defendant has consented to the relitigation of the claim since the judiciary retains an independent interest in preventing the misallocation of judicial resources and second-guessing prior panels of Art. III judges when the issue has been fully and fairly litigated in a prior proceeding.

Accordingly, if a court is on notice that another tribunal has decided the issues presented, the court may dismiss the action, on its own, even though the defense has not been raised. *Id.*  Therefore, as it relates to this case, the court concludes that the institutional importance of applying collateral

estoppel trumps the Plaintiff's contention that the Defendants waived this defense.

Turning now to the substance of the collateral estoppel-or "issue preclusion"doctrines, the general rule is that an issue actually and necessarily decided by a court of competent jurisdiction is conclusive in all subsequent legal actions involving a party to the prior litigation. *Adair v. Sherman,* 230 F.3d 890, 893 (7th Cir.2000). Issue preclusion can be used to bar a § 1983 plaintiff from relitigating a Fourth Amendment search-and-seizure claim that he lost at a criminal suppression hearing. *See Allen v. McCurry,* 449 U.S. 90 (1980); *Guenther v. Holmgreen,* 738 F.2d 879, 883 (7th Cir.1984). For issue preclusion to bar a claim, four elements must be met: (1) the issue sought to be precluded is the same as that involved in a prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was represented in the prior action. *Adair,* 230 F.3d at 893.

Plaintiff makes no assertion that any of these elements is lacking in the present case. As noted previously, the plaintiff's only contention is that collateral estoppel has been waived. However, examining the above four elements, it is clear that collateral estoppel applies to this case. Best litigated the identical claims he has presented to this court in his prior criminal proceeding. Best was represented by counsel at those prior proceedings and had a fair and full opportunity to litigate them at both the trial court and appellate levels. Moreover, Best had an incentive in the prior criminal proceedings to vigorously litigate these issues as they affected his liberty. Accordingly, the court finds that plaintiff is collaterally estopped from challenging the validity of his arrest and search by the finding of probable cause in the earlier criminal suppression hearing. Likewise, he is also estopped from challenging the legality of the searches conducted at each location. Simply stated, one full and fair opportunity to litigate the issues is sufficient and precludes Best from

9

relitigating the issues in a 42 U.S.C. § 1983 suit. Defendant's Motion for Summary Judgment is **GRANTED.**

**Fifth Amendment**

Best also asserts a rather undeveloped contention that his Fifth Amendment rights were violated by the officers because the officers continued to question him after he invoked his right to counsel. *Miranda v. Arizona,* 384 U.S. 436 (1966). *Miranda* prohibits the government from using "statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444. To be sure, *Miranda* requires that, prior to a custodial interrogation, police must warn a person that he has a right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that he cannot afford an attorney, one will be provided. *Id.* at 479.

The problem with Plaintiff's § 1983 *Miranda* claim is that the charges against him were dismissed and any statements he made were never utilized against him in any criminal prosecution.. Questioning a plaintiff in custody in violation of *Miranda* is not a basis for a § 1983 claim as long as the plaintiff's statements are not used against him at trial. *Renda v. King,* 347 F.3d 550, 557-58 (3d Cir.2003); *see also Chavez v. Martinez,* 538 U.S. 760 (2003). Violations of the prophylactic *Miranda* procedures do not amount to violations of the Constitution itself. *See, e.g., Warren v. City of Lincoln*, 864 F.2d 1436, 1442 (8th Cir.) (holding that "the remedy for a *Miranda* violation is the exclusion from evidence of any compelled self-incrimination, not a section 1983 action"), *cert. denied,* 490 U.S. 1091, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989); *Bennett v. Passic,* 545 F.2d 1260, 1263 (10th Cir.1976) ("No rational argument can be made in support of the notion that the failure

10

to give *Miranda* warnings subjects a police officer to liability under the Civil Rights Act").

Moreover, to the extent Best is attempting to assert a claim under the Fifth Amendment for denial of counsel during his interrogation, this claim too, is foreclosed. *See James v. York County Police Dep't,* 160 Fed. Appx. 126, 133 (3d Cir.2005); *Guiffre v. Bissell,* 31 F.3d 1241, 1256 (3d Cir.1994). The right protected under the Fifth Amendment is the right not to be compelled to be a witness against oneself in a criminal prosecution, whereas the "right to counsel" during custodial interrogation recognized in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is merely a procedural safeguard, and not a substantive right. *Id.* Accordingly, because no constitutional right is implicated through the alleged denial of counsel, no claim lies under section 1983. Defendants' Motion for Summary Judgment is **GRANTED.**

## CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment is GRANTED. The Clerk is directed to enter judgment in favor of the Defendants.

Entered: This 19th day of June, 2007

                                                                                s/ William C. Lee
                                                                                United States District Court